REDMANN, Judge.
The city of New Orleans and its public transportation company appeal from a judgment which cast them in solido for part of a $195,000 estimate for repairing plaintiffs’ building. Plaintiffs answer this appeal seeking increase in quantum and personal injury damages as well.
The broad legal question is whether a building owner may recover from the city and the bus company for damages to the building resulting from vibrations caused by 11- to 16-ton omnibuses using a public street not designed for their weight following a route change occasioned by the city’s action. Appellants also question whether causation and damages were proven.
Plaintiffs bought in 1966, for $120,000, the “Gardette-LePretre House located at 716 Dauphine Street [corner of Orleans] in the French Quarter, a property of major architectural and historical importance,” a three-story brick building constructed in 1834. Its foundation is probably the French Quarter’s typical “spread footings of cor-beled brick on. top of a timber underjayment.” The building extends to the sidewalks, with balconies supported by iron columns extending over the sidewalks, on both its 77-foot Dauphine street frontage and its 33-foot Orleans street frontage. A year or two previous to plaintiff’s acquisition, the building was left in “good condition” (with no cracking) by a contractor who testified he “had the building plastered” at that time. (Whether the plaster was at that time cracked or simply deteriorated from age is not shown.)
For 20 years two public bus routes had passed along the Dauphine street side of the building, in recent times totalling 1,265 buses a week. These buses weighed about 23,000 pounds empty and 33,000 with a maximum load. Nevertheless, plaintiffs testify, the Dauphine street bus traffic did not cause cracking or otherwise damage their building during the five years they owned it prior to 1971.
In 1971 the city decided to close part of Royal street in the French Quarter from 11 a. m. until 7 p. m. daily to create a pedestrian mall. It rerouted three bus lines which had traveled Royal street to Canal by having those buses (523 weekly) turn right from Royal on Orleans and then, two blocks away, left from Orleans on Dauphine and then to Canal. These added buses thus passed along both the Orleans and the Dau-phine street sides of plaintiffs’ house. Because the French Quarter streets are narrow the turn was difficult for the 50-foot-long buses, especially if other vehicles were parked too close to the corner, and sometimes — plaintiff D’Amico, who lived at the house, said “hundreds” of times — the buses would roll across the curbing at the corner.
Plaintiffs allege that this added bus traffic’s vibrations, especially when rolling across the corner curbing, caused the cracking and other damage their building now has. Their architect opined that “vibrations” caused the damage but (erroneously, plaintiff D’Amico admitted) testified there was no device for measuring vibrations. Defendant bus company’s, civil engineer testified to a variety of possible causes of the damage,, among which the trial court properly found four possibly applicable in our circumstances, namely foundation motion problems, normal wear and tear or neglect, temperature and humidity changes, and vibrations from heavy traffic. Evidently concluding that the evidence did not estab *118 lish any of these causes as more likely than any other, the trial judge attributed a fourth of the damage to the traffic and, on the basis of a week’s traffic count of vehicles turning off Orleans into Dauphine, found that public buses were 33.718% of the weight of the traffic and therefore attributed to the buses that percentage of a fourth of the total cost of repair. The judge accepted a contractor’s estimate of $194,878 as the cost of repairing the building, and awarded $16,427.24.
We agree that the owner of a reasonably-constructed building should not have to suffer damage by mechanical behemoths which elect to use adjoining roadways not capable of handling their heaviness. Yet we are also satisfied that the owner of property adjoining streets does not have a servitude to prevent traffic from using the streets, and cannot recover for a flimsily-construeted house’s collapse from vibrations from traffic of reasonable weight. Perhaps, in the spirit of C.C. 667’s sic utere principle, neither the street nor the adjoining property can be so used as to interfere with the reasonable use of the other: a reasonably-constructed house and reasonably-weighted vehicular traffic can co-exist along a reasonably-constructed street.
Its age, and possibly its foundation, might make the house suspect as in unreasonably weak, condition. However, the showing that the house had been completely replastered and otherwise was in good condition five years earlier prevents blaming on the house’s condition the stucco cracks which suddenly appeared after the bus route change.
Vibrations from the added Orleans street bus traffic are related to both the weight of the buses and the condition of the street. Presumably a modern superhighway would so support slow-moving 16-ton buses that their passage would generate little vibration. And presumably a lightly-surfaced street would not only transmit vibrations but also, as its surface condition degenerated from the too-heavy traffic, contribute to vibrations as it became a series of holes and ruts for the vehicle’s tires to bounce against. However, there is no evidence that Orleans street was a frail-surfaced street, although there is evidence that the street developed a large bump towards the intersection with Dauphine, inferentially because of the buses and other traffic coming to a stop at Dauphine.
Nevertheless we deem permissible the trial judge’s inference — from factual testimony that the building lasted five years uncracked before the route change and from expert testimony that the buses could have caused the cracking — that the Orleans street surfacing was no match for the buses, and that both defendants knew or should have known that routing the buses over Orleans street would result in possibly damaging vibrations. Similarly both defendants knew or should have known that the street dimensions would — especially if other vehicles parked too close to the corner — occasion the buses’ rolling over the corner curbing, causing further vibrations. Some damage-avoiding measure, either strengthening of the street surface or reduction of the bus size, was indicated prior to rerouting. We reject as factually unsupported the bus company’s position that it had no alternative but to accept the city’s rerouting; presumably, it could at least have obtained a delay until lighter buses were available. We therefore conclude that the evidence permits the trial judge’s conclusion that both defendants’ fault in the rerouting was a cause of the cracking in plaintiff’s building.
We agree with defendants that the $195,000 repair estimate includes much that was not shown to be related to vibration damage. We find only the exterior stucco cracking to be due to the bus vibrations because there is no credible evidence which relates other proposed repairs to the bus traffic. But we also agree with plaintiffs that the attribution of the damages to automobiles, trucks and buses equally, proportional to their weight, is erroneous. Because of their much lighter weight, automobiles do not cause the damaging vibrations. We conclude that the proof makes it more *119 probable than not that the buses caused the stucco damage, which will cost $22,000 to repair (4,400 sq. ft. at $5).
Plaintiff D’Amico’s alleged personal injuries were not proven.
The judgment appealed from is amended in quantum to $22,000 and is otherwise affirmed at appellants’ cost (the city being liable for costs only insofar as provided by law).